M’Girk, C. J.,
delivered the opinion of the Court.
This was an indictment on the 43d section of the act' of the General Assembly respecting crimes and misdemeanors, which section is as follows : that if any person shall counterfeit, or cause or procure to be counterfeited, any of the species of the gold or silver coins now current, or hereafter to be current in this State, or shall pass or give in payment, or offer to pass or give in payment, the same, or shall permit, cause or procure the same to be altered or passed, with an intention to defraud any person or body politic or corporate, being thereof duly convicted, shall be fined, imprisoned, &c. The indictment charges that the defendant did counterfeit a Spanish milled dollar, which was current in the State. On the trial the defendant was found guilty and judgment was given against him. A motion was made in arrest of judgment, for the cause that the indictment does not charge that the defendant counterfeited the Spanish milled dollar with an intent to defraud any person. The indictment is, as stated by the cause, in arrest. The Court overruled the motion. This is assigned for error.
To sustain the indictment, Mr. Allen, the Circuit Attorney, relies on the following argument. That the word counterfeit, ex vi termini, shows that the act was done with intent to defraud: to counterfeit means to copy or imitate without authority or right and with a view to deceive or defraud by passing the imitation for the original. Webster’s Dictionary, title counterfeit. Secondly, that by a view of the section in question, the words, with intent to defraud, are satisfied when only referred to the passing counterfeit money, without saying with an intention to defraud. As to the first point we are of opinion that the word counterfeited is not a technical term legally meaning that the act was done to defraud. The law requires every thing which is necessary to constitute the crime should be laid in the indictment. In this case we understand that the counterfeiting must be done to defraud and so laid in the indictment, by express words and not by circumlocution, 4 Bl. Com. 243. The rule is, that when the intent constitutes a part of the offence, the intent must be laid expressly in the indictment as well as the act to which it is to be The next *298 whether the intent to defraud by counterfeiting is to be considered a part of the of-fence. This subject scarcely admits of any argument, it depends on the wording of the act and the arrangement of the sentences in the section; the first part of the section declares, that if any person shall counterfeit any Spanish milled dollar or pass the same, or cause the same to be passed with intent to defraud, &c., why the intent here mentioned should be restrained so as only to act on the passing we cannot conceive. We conceive the accumulative words with intent to defraud, attaches to all the preceding acts mentioned before it. We see nothing in the words nor the nature of the subject to forbid it. The judgment of the Circuit Court on this point is reversed.
Another point has been raised by Mr. Strother, counsel for the plaintiff in error, which is, that by the Constitution of the United States the subject of coining money and fixing the value of foreign coin, and to provide for the punishment of counterfeiting the same, is given to Congress, and that Congress has acted on that power by providing for the punishment of counterfeiting the Spanish milled dollars, therefore the State cannot. The reversal of the judgment on the first point in the cause will not necessarily entitle the prisoner to a release, the cause might be remanded and a new indictment found; but if this last point is decided for him, no indictment which could be framed would be good, it therefore becomes necessary to consider this point. The Constitution of the United States declares that Congress shall have power to coin money, regulate the value thereof and of foreign coin, &c., and to provide for the punishment of counterfeiting the securities and current coin of the United States, 1 art., 8 sec., clause 5 and 6. By several acts of Congress, and particularly by the act of 1806, the Spanish milled dollar was made current money of the United States. By the 20th sec. of an act of Congress, passed 3d March, 1825, entitled an act more effectually to provide for the punishment of certain crimes against the United States and for other purposes, it is provided a that if any person or persons shall falsely make, forge or counterfeit, in the resemblance or similitude of the gold or silver coin which by law now is, or hereafter may he made current in the United Slates, with intent to defraud any body politic or corporate, or any other person or persons, every person so offending shall be deemed gnilty of felony, and shall on conviction thereof be punished by a fine not exceeding five thousand dollars, and by imprisonment and confinement to hard labor not exceeding ten years. By the 43d section of an act of the General Assembly of Missouri respecting crimes, it is provided, “ that if any person shall counterfeit, or cause or procure to be counterfeited, any of the species of the gold or silver coin now current, or hereafter to be current in this State, with an intention to defraud, &c., every person so offending, being thereof duly convicted, shall he imprisoned not exceeding ten years, be fined not exceeding one thousand dollars, be whipped not exceeding thirty-nine lashes, stand in the pillory two hours, and be rendered incapable of being a witness or juror, ox of voting at any election, or of holding any office of profit, honor or trust within this State. The question to be decided by this Court is, whether under the laws and Constitution of the United States the Congress and the State can concurrently legislate on the subject of counterfeiting the current coin; provide different or the same identical punishments for the same act, committed by a citizen. To he subject to two masters in respect to one and the same duty, is in its nature intolerable. Yet it is admitted, that one case arises out of the Constitution and laws of the Union, and the laws of the State where duties of a like kind must necessarily he required— *299 that is, in the case of paying taxes..;. The General Government may lay and collect taxes, and when this is done it forms no bar to a like demand on the part of the State. The General Government by special grant have a right to collect taxes from the citizens. This grant to Congress cannot, upon any sound rules of logic, be holden to be exclusive in Congress and exclusive to the States, inasmuch as it would be unreasonable to suppose the States could intend to part with and grant away their essential means of existence: without money no State could exist. We have seen that the power to punish for counterfeiting the current coin of the United States has been expressly given by the Constitution to Congress. It is also declared by the 1st sec. of the 1st art. that all legislative power granted by the Constitution shall be vested in Congress, which shall consist of a Senate and House of Representives, and by the 17th clause of the 8th section of the same article it is further declared (hat Congress shall have power to make all laws which shall he necessary and proper for carrying into execution the foregoing powers and all other powers vested by the Constitution in the government of the United States, or in any department or officer thereof. By the 2d section of the 6th art, it is declared that this Constitution and the laws of the United States wnich shall be made in pursuance thereof, &c., shal.1 be the supreme law of the land: and again by the second section of the 3d art. of the Constitution, it is declared that the judicial power of the United States shall extend to all cases in law and equity arising under the Constitution and laws of the United States, &c. Erom this view of the Constitution I conclude that wherever the power is given to Congress to legislate on any particular subject or crime, they cannot transfer that power to any of the States, nor to any other Court than a Court of the Federal Government. The act of Congress above referred to, in the last section provides that nothing in that act shall be construed to prevent the State Legislatures from providingpunishments against the crimes therein made punishable. It is argued by Mr. Allen, in behalf the State, that,this proviso authorizes the State to legislate on the same subject. Jj. My view of this^matter is this, that Congress cannot, by any permission they may give, shift from.fhemselves the duty of providing a punishment for counterfeiting the current coin, much less can they creale a power on the part of the States to legislate on any subject, where they had none before. The Federalist, No. 45, has been cited to show that where the Constitution of the United States has given exclusive jurisdiction to Congress, as in the case of the exclusive jurisdiction given to legislate over the District of Columbia, then the States cannot legislate: and secondly, where the States are expressly forbidden, as in the case where they are forbidden to coin money, to emit bills of credit, &e., there they cannot act: and thirdly, where the power to legislate is given to Congress and is not forbidden to the States, yet if the exercise of legislation by both would he repugnant to the nature of a due exercise of the power on the pari of Congress, then the States are forbidden to exercise the power, and that in all other cases the powers mentioned in the Constitution may be exercised concurrently. Supposing this classification to be correct, which I will admit is correct for the present, then how is the present power to be classed? Clearly with the third class. How can Congress exercise the power to-punish counterfeiters, if at the same time the States can do the same thing ? It is admitted that by the 5th art. of the Constitution of the United States ho person shall for the same offence be twice put in jeopardy of life or member. The equity of this provision I think extends to cases where the punishment is less in degree than life or member. I think the provision .extends to this case, where the pun *300 ishment by the law of the Union is fine and imprisonment; I ask how is this manto be protected from an indictment in the District Court of the United States? It is answered by the Circuit Attorney, that he could in the United States Court plead this conviction in bar. Is it true that an acquittal, conviction or pardon, before conviction of and for an offence against the law of Missouri, is a good bar to an indictment for the same act created an offence by the law of the United States in a-case where the Congress of the United States have a clear and admitted right to legislate and declare the puhishment? If this is true, it must also he true that if the conviction takes place first in the Federal Court, then it would be a harto a prosecution in a State Court where the State law makes the same act an offence against the State. Let us test the principle by the case at bar. In this case the punishment is not the same, although, the act to be punished is the same by both laws. To make a former conviction good at common law, the cause of the prosecution must be the Same in both actions; the judgment of law with regard to the degree or quantity of punishment should be the same also : now these coincidents are not likely to happen where the offender and the offence are subject to the separate action of two independent separate wills. In this case a portion of the respective punishments are alike, with regard to the imprisonment, in every thing else they are entirely unlike ; the act of Missouri, in addition to the penalty of fine and imprisonment, imposes the pillory, disfranchisement,whipping, incapacity to be a witness, &c. How much,'or how many of these items could be holden to be an equivalent for the discrepancy between the fine imposed by the act of Congress of not exceeding ten thousand dollars, and that imposed by our act of a fine not exceeding $1000 ? I It appears to me the bare statement of the case is sufficient to show that no plea in bar would be sufficient to protect the citizen against the imposition of a double punishment. In this case the United States having a clear right to declare the punishment, have declared it sufficient to impose fine and imprisonment. But the State has not been content with that punishment, but has added other heavy penalties. If the State can do this, why not impose still other and further penalties extending to death. But suppose in this case the prisoner had been first indicted in the U. S. Court, found guilty and had judgment and execution upon him, then he is again indicted in the State Court, he pleads the former conviction, where shall our Court stop ? Shall we only look at the act which constitutes the offence and stop there, or shall we add to the sentence of that Court all superadded by our act ? I see no difference in this case and the case of the power granted to Congress to define the punishment for treason. In that case the Constitution does not prohibit the States from declaring what shall be the punishment for treason against the U. S. As the law of the United States now stands, the punishment for treason is death. Suppose the State should enact that if any person shall levy war against the U. S., &c., he shall be deemed guilty of treason against the Slate and shall be imprisoned one day and fined ten dollars. If a person should then levy war against the United States, should be convicted or acquitted by the State Courts, if this thing of pleading a former conviction in the case of counterfeiting is to be allowed, why not allow it in the last case put ? If it is allowed, is it not obvions that a State opposed to the measures of the Union in war may effectually defeat the most righteous measures of the government. What could have prevented a portion of the Eastern States during the last war from paralyzing the arm of the Federal Government by this sort of legislation. Suppose again a State should be desirous to admit foreign goods free of duty. Now if the bar to be pleaded goes to the *301 identical act prohibited by both governments, then this consequence would follow: the U. S. prohibit smuggling and declare the punishment to be a forfeiture of the goods and fine, &c.; the State forbids the act of smuggling also, but declares the punishment to be a fine of one dollar for each offence, without forfeiture. How completely this would be an evasion of the revenue laws, if a conviction or an acquittal under this State law would be a bar to a prosecution under the law of the United States. I put this case under the impression that a State is no where prohibited expressly from inhibiting foreign goods into their ports, though they cannot lay duties nor imposts. I will now again recur to the case of treason by the Constitution of the U. S. The President of the Union has power to pardon offences against the United States. Now if it is true that the case of counterfeiting and that of treason can be concurrently acted on by both governments, then a pardon by a Governor of a State would be a bar to a future prosecution, whether the pardon was granted before or after conviction ; and so on the other hand, a pardon by the President would oust the State of its jurisdiction, unless indeed we are prepared to admit, the delinquent may lawfully be punished twice. I assume it as a postulate, that if the State has power to punish, the Governor has power to pardon; the provision in our Constitution with regard to the pardoning power, is just like the power given to the President. It is furthermore my opinion that Congress ought not to exercise any powers which are not clearly granted to them as principal or incidental powers, and in all cases where it is doubtful in their minds whether a power is so given, they should forbear the exercise thereof; but that with regard to powers thus granted, they are bound to exercise them when expediency requires it to be done; and that with regard to the States, I think they never should exercise a power clearly granted to the General Government where incompatibility exists, as in the present case, although the General Government should have failed to enter on the exercise thereof. It don’t follow that because the Congress have neglected to occupy the power, that it may be occupied as a waif or thing lost, and that the States can use and keep it till Congress shall demand it. I am not prepared to admit the right of a State to punish the crimes committed against the United States. To punish crimes committed against a State, is an exertion of sovereignty; and for one State to exercise any portion of the rightful sovereign power properly belonging to another, is a good cause of war if the other chooses to consider it so. If it does noj, then the State so permitting is exercising toward the other a portion of sovereign grace. No State in this Union should degrade itself so far as to receive grace from any other, and much less should a State be willing to become the mere executioner of the will of the United States, with regard to remnants of its will and power unused. Did any respectable Government ever yet undertake to execute the eriminalcode of another s can the United States with any sort of decency execute the lajjflhttson and felWy belonging to France and England ? Crimes against the peJ^^^^Biity of those States, cannot be crimes against the U. S. If we ever uno^^^^Hlo so, it must be undertaken as a job or piece of employment. Can the St^HPPfsouri lawMJy, if the United States were willing, choose to consider crimes done against the iOT'ereignty of the latter, as crimes committed against her also, and in that way become the ministerial agent of the General Government? Upon the whole of the premises I conclude that the power to punish the counterfeiting the current coin, is expressly by words giveq to Congress, and that by reason of repugnancy to the exercise of that power *302 by the States, it is exclusive; and that therefore the 43d section of the act of the General Assembly is void. M. McGIRK.
I concur in the opinion that the fraudulent intent ought to be charged in the indictment. I also believe that Congress having by law imposed penalties on the offence of counterfeiting the current coin of the United States, the laws of the State passed since imposing penalties on the same offence are null and void, and any Jaw that might have been passed by the State, before Congress acted on the subject, would have been superseded by such action of Congress. G. TOMPKINS.
In this case since the opinion was delivered, the counsel for the prisoner put into my hands Mr, Justice Story’s Constitutional Law. I am happy to find my opinion fully supported, as to the exclusive jurisdiction of the United States, by that able jurist. See 3 vol. Story’s Constitutional Law, p. 21. M. McGIRK.
My opinion differs from that of the Court. An indictment for a common law oiFence must describe it in such terms as are aptly used to define the offence; but in an indictment for a statutory offence, it is sufficient to charge it in the language of the statute; if when so charged the indictment be bad, it will be because the statute is too vague and uncertain; and in such case ho formal words in the indictment will aid the statute. The indictment in this case is founded on the 43d section of the act concerning crimes and punishments. The offence it seeks to punish is created by the statute, and is described in the language of the statute! The indictment, I think, is therefore in this particular good enough. The Legislature might well conclude that the current coin would never be counterfeited without some fraudulent intent; whereas the counterfeit coin might be often passed by individuals, not knowing it to be counterfeit or intending to defraud; the knowledge and fraudulent intent should therefore be charged in an indictment for passing, but need not in an indictment for counterfeiting. Such I think is the true construction of the statute as to this point. I think too that the Legislature intended to punish and prevent the counterfeiting gf such coins as constitute the circulating medium of the country, and not such only as are made or declared current by act of Congress. Current coin is one thing, current money another and very different thing. The coin most current in this country, and of which the counterfeiting would be most injurious to the community, is not money or coin made current by act of Congress. The constitutional question which has been raised, is full of interest and difficulty, and deserves much more labor and research than I have been able to bestow upon it. Without attempting therefore to enter minutely into the argument, I shall content myself with a concise statement of the principles I maintain and the views I have taken, and upon which I hold that the State may constitutionally provide for and punish the counterfeiting of the current coin. All power belonged originally to the States or to the people. The •(fciited StateJMÉBkiktheir power from the Constitution, and like a chartered company can powers only as are expressly given, or are clearly incident to those given. Where it can be reasonably doubted whether iurower has mjHHted or not, it may be safely affirmed that it has not been grantelF The powers not granted are expressly reserved to the States respectively or to the people; as residuums of original sovereignty not parted with or surrendered. Where powers had be.en called into action by the States prior to the formation of the Constitution, which were not wholly parted with, the residuums belong to the States; the residuums of such as remained dormant at that period, *303 abide still with the people. That the States retain the power of legislating concurrently with Congress, on all subjects over which they have not granted or surrendered to Congress an exclusive jurisdiction, or from which they have not expressly excluded themselves, or which in their nature do not belong to or originate with the General Government. And here let me remark that in the view I take of the subject, it matters not whether the Constitution be regarded as a grant of powers from the States, or more properly from the people ; the contrary doctrine will leave the General Government (as it seems to me) without check or restraint to provide for the general welfare, as in its wisdom may seem needful and proper; will convert the recipient into the fountain of power, and make the attorney or agent superior to the constituent or principal. The power of punishing the counterfeiting of the current coin, belonged originally to the States, and had been exerted in legislation prior to the formation of the Constitution. How then, I will ask, has it been parted with? It is not protended that the grant of this power to Congress is in its terms exclusive, or that there is any express prohibition to the exercise of it hy the Slates; but it is argued that the power to punish the counterfeiting of the coin, must from the very nature of tho subject and the character of the power, belong to and be exercised exclusively hy Congress; that without any express grant it would belong to Congress as incident to the power to coin money and regulate the value thereof; that tile value of the current coin can only he regulated and preserved by providing- a uniform punishment for those who counterfeit and impair its value; that the State by its legislation on the subject might counteract and thwart the views and policy of the General Government; that Congress having legislated on the subject, no act of the State Legislature can exist and have elfect consistently with the act of Congress, for if both law» correspond, then the State law is idle and inoperative, and if they differ, the act of Congress being superior repeals the State law’; that two distinct wills cannot be exercised over the same subject at the same time, without coming into collision, &c. The force of this argument is not perceived, or if rightly understood, is not admitted. The same thing might be said of the exercise of concurrent jurisdiction in every case; and yet this is expressly provided for, and necessarily exists in many cases. We are not to argue from the possible abuse against the use of power; this would put an end to all government, inasmuch as the best may be abused or badly administered. The States are just as much interested in the currency now as they -were before the formation of the Constitution. Though it may be conceded that Congress could more conveniently and efficiently regulate its value, so far as it may depend upon providing uniform and suitable punishments for counterfeiting-. It is not however a question of convenience or fitness, hut of right; and it may well be that it was deemed better for the States to retain in their own hands the inconvenient exercise of this power concurrently with Congress, than to surrender it to the General Government, who might not exert it efficient^; be that as it may, the power has not been inhibited to the States, but on the cdntráry by strong implication, has been purposely left with them. The 8th sec. of the 1st art. of the Constitution of the U. S., enumerates the powers granted to Congress, and the 10th sec. of the same art. enumerates the powers withdrawn from the States; the power to coin money and to provide for the punishment of counterfeiting are expressly granted, whilst only the power to coin has been withdrawn. If it had been intended to withdraw from the States the power to punish counterfeiting, is it fair to insist that it would have been mentioned along with the power to coin ? If it be true that the subject *304 belongs exclusively to Congress, whether they have legislated on it or not, the States would have no right to touch it. It is just as important that they should have the power to punish the counterfeiting of other coins in use and circulation in the community, as of those made current money by express legislation; for the value of each being relative, to impair the value of one would of necessity impair the value of another. It is not perceived that the objections urged in this case against the exercise of concurrent jurisdiction by the States, are entitled to much weight, or that the difficulties apprehended are likely to arise. When once a subject has been passed upon by a competent power, that decision should be final, or subject to review and correction by the power only by whom it was made, and in the mode only provided or prescribed by that power or by the State or sovereign under whom that power is exercised. When one competent power has commenced to take jurisdiction, it cannot be interfered wilh or ousted of that jurisdiction, but must be left to decide freely: and that decision will bar any other or further prosecution for the same offence, by the same or any other power, and may be so pleaded. This is in accordance with the provision of the Constitution, “ that no person for the same offence shall be twice put in jeopardy of life or limb.” Such is the law of nations in reference to matters over which each nation has an equal right to adjudicate; and such is the law in separate States, where concurrent jurisdiction is given to different tribunals of the same State. Forasmuch, therefore, as neither the power, nor the occasions for its exercise, can be said to have originated wilh the General Government, or can be claimed as peculiarly appropriate to it, arid as the power has not been granted exclusively to Congress, nor expressly withdrawn from the States, I hold that it may be rightfully exercised by the States. • R. WASH,